## THE PEOPLE v. ORANGE A. CARRIER.

*Excusing juror—Peremptory challenge— Guardianship of young girls— "Enticing" away females—Previous illicit relations.*

A juror may be excused at any time before he has been sworn, for any reason personal to himself which seems sufficient to the judge. So *held* where the excuse was that he was a witness in the next case on call.

A juror who has taken his place in the jury-box, and with whom both parties profess to be satisfied, can yet be peremptorily challenged by the prosecution before he is sworn.

Comp. L. § 7533 providing for the punishment of any person who for purposes of prostitution shall entice away a female of less than sixteen from her father, mother, *guardian or other person* having the legal charge of her person, covers cases of girls who are living in a family with the knowledge of a parent who does not object, or who has delegated the charge of the girl to the head of the family. It also applies to girls who are not under strict legal guardianship, but are orphans or abandoned by their parents and are given a home by charitable persons.

All girls under sixteen and not leading depraved lives are presumptively in the legal charge of some one.

The statute punishing the enticing away of a female (Comp. L. § 7533) applies where the defendant accomplishes his purpose while he artfully avoids making her a direct proposition to go away with him.

In a prosecution for enticing a female away for purposes of prostitution evidence of previous illicit relations and of the subsequent conduct of the parties is admissible as bearing upon defendant's intent in enticing her away.

Evidence of former illicit relations is significant though not conclusive in its bearing upon the intent of one who is charged with enticing away a female for prostitution; but it may properly be dispensed with where proof of their subsequent conduct is conclusive as to the unlawful intent.

Exceptions before judgment from Calhoun. Submitted June 23. Decided June 29.

INFORMATION for enticing away a female. Respondent was found guilty below. Conviction sustained.

Attorney General *Jacob J. Van Riper* for the People. Challenges to jurors may be made at any time before the jury is sworn: *Jhons v. People* 25 Mich. 499; *Hunter v. Parsons* 22 Mich. 96; one may be prosecuted for enticing away a female even when she has no legally appointed guardian: *Iowa v. Ruhl* 8 Ia. 452; if respondent had such an influence over the girl that she went without express enticement he may still be convicted: *People v. Bristol* 23 Mich. 126.

*John Atkinson* and *Sidney Thomas* for respondent. A juror cannot be arbitrarily withdrawn or excused without sufficient cause: *State v. Shaw* 3 Ired. 536; *Boles v. State* 13 Sm. & M. 398: 24 Miss. 453; a widow who re-marries thereby loses control of a minor child: *Williams v. Hutchinson* 5 Barb. 122.

COOLEY, J. The charge on which the defendant has been convicted is of 'having, in the month of May, 1879, feloniously taken and enticed one Jennie. L. Hendricks, a female under the age of sixteen years, from and without the consent of James Barry, her guardian, who had the legal charge and

custody of her person. In different counts of the information his intent is charged to have been for the purpose of prostitution, of concubinage and of marriage. The case comes up for review on exceptions before sentence.

1. The first exception is to the action of the court in excusing a juror. The record states that one John Blake, having the qualifications of a juror of said county, was summoned as a talesman, "to whom no challenge or objection was made by either party, whereupon said Blake stated he was in attendance at said court as a witness in a case yet to be tried at said term, and the next case on call," whereupon the judge excused him and the defendant excepted. The exception has no merit. Before a juror has been sworn in the case, the judge may excuse him for any reason personal to the juror which seems to the judge sufficient. This was recognized in *Atlas Mining Co. v. Johnston* 23 Mich. 36, but it needs no authority.

2. The prosecution was also permitted to challenge peremptorily a person who had once been placed in the jury-box, both parties saying they were satisfied with him. He had not been sworn, and there is no doubt of the right to make the challenge. It was said on behalf of the defendant at the argument that the defendant had at the time exhausted his peremptory challenges. Whether that would make any difference we need not consider, as the record does not show the fact.

3. The principal exceptions relate to the right of Barry to be regarded as the legal guardian of the person of the girl for the purposes of the prosecution. The evidence tended to show that the father of the girl was dead or supposed to be dead; that the mother was living with another man as his wife, but whether legally married to him did not appear; that the girl was living in Barry's family; and that on November 29, 1878, on the petition of the girl, who was then over fourteen years of age, the judge of probate of Calhoun county appointed Barry to be her guardian. In the petition Jennie states that she is possessed of no estate, "but that it is necessary a guardian should be appointed for said minor

for the purpose of taking care of the interest of said minor in her person." The order of appointment was the usual order which is made for the guardianship of property, and it is objected that it gave no legal control of the person. But the fact that Jennie lived in the family of Barry after the appointment with the consent or at least with the knowledge and without the objection of the mother was proved, and that she continued there until the time of the alleged offense. The necessaries of life were supplied to her in the mean time by Barry, as they were to other members of his family.

The circuit judge charged the jury that the letters of guardianship did not make Barry the guardian of the girl's person, but that they were properly in the case for the bearing they might have on the actual custody. But he further instructed them that the parent having a right to the custody of a child may delegate the authority; that this right was primarily in the father, but in his absence belonged to the mother, who may if she see fit give the custody to a third person for a longer or shorter period, resuming the control at will; that it was not necessary in this case that Barry's right should be of that character that the mother would be precluded from resuming her control; it was enough if, while the girl lived at Barry's, the mother had consented to his exercising the same control over her in respect to her liberty that the mother herself could exercise for the time being. If she had done so, and had not revoked that permission, then Barry had that right to the custody and control which in contemplation of law amounts to a legal charge of the girl.

We fail to discover any just ground of objection to this instruction. The statute provides that "Every person who shall take or entice away any female under the age of sixteen years, from her father, mother, guardian, or other person having the legal charge of her person, without their consent, either for the purpose of prostitution, concubinage, or marriage, shall be punished," etc. This plainly contemplates that there may be a legal charge in one who is neither

parent nor guardian, but who under the facts of the case stands in the place of one or the other. It is the actual state of things and not the existence of a legal relation that the statute contemplates; and an orphan adopted into a family without legal guardianship, or a girl abandoned by her parents and given a home by charitable persons, is as much within the reason and intent of the statute as any other female. The protection was meant to be general; and presumptively every female within the age indicated, who has not already abandoned herself to a depraved life, is in the legal charge of some one. Barry, under the facts shown, had unquestionably the legal charge of this girl; and neither the court nor the jury erred in the conclusions arrived at.

4. It was also insisted that there was no evidence to go to the jury tending to show that the defendant enticed the woman from Barry's custody, or that if he did, his purpose was either prostitution, concubinage or marriage. The facts were that defendant induced a brother of the girl to persuade her to meet him at a place away from Barry's house, and that after the interview which there took place the girl went off at once to Canada. How far, if at all, this was induced by the persuasions of the defendant was left to the jury on the facts. As throwing light upon the intent the prosecution was allowed to show that the girl had previously lived with defendant in illicit relations in Canada. The defendant claimed that the evidence showed the girl herself proposed the action which she took, and that the defendant in seeking for the interview had no other motive than to explain to her his conduct and motives in another transaction in respect to which it was expected her evidence was to be used against him. The circuit court charged the jury that before they could convict they must be satisfied the defendant enticed the girl away. "It may have been done by open solicitation to go for one purpose or for another purpose. It may have been done by designedly portraying to her her situation, and the result of going back to Mr. Barry, or the place from which she came, in such a light as to lead her to go to escape a return. If this were done with the

design of getting her to go, it is an enticing, although the defendant may not have asked her to go, and apparently only consented to go with her; but if he had no design to get her to go away, and did nothing to bring about such an end, it would not be an enticing, and the defendant could not be convicted."

This instruction was correct. A man cannot be suffered to evade the statute by artfully avoiding a direct proposition that she go off with him, when his conduct is equivalent to such a proposition, and not only suggests it to the girl, but is calculated and designed to induce her to go. The judge also instructed the jury that the previous relations of the parties might be considered as bearing upon the intent of the defendant in enticing the girl away. This also was correct. The previous relations of the parties were not conclusive, but they were very significant. *People v. Jenness* 5 Mich. 305. It may be added, however, that the evidence of subsequent conduct was so conclusive of the unlawful intent that the proof of previous misconduct might well have been dispensed with.

Other rulings of the court were criticised on the argument, but we see no occasion to discuss them. No error in law was committed, and the record gives no indication of any want of fairness or impartiality on the part of either court or jury.

It must be certified to the circuit court that judgment should be rendered on the verdict.

The other Justices concurred.