## The State of Iowa v. A. M. Hunter, Appellant.

**Murder:** PEREMPTORY CHALLENGES: WAIVER OF RIGHT. In a trial
1    for murder the defendant is entitled to ten peremptory chal-
lenges, and the jury should not be sworn until the challenges
are either waived or exercised and the jury accepted, as pro-
vided by Code section 5369.

**Same.** Where "the defendant waives one more challenge" he is
2    entitled to exercise the remaining challenges and it is error
for the court to refuse the right.

**Right of Challenge:** DENIAL: PREJUDICE. The right to perem-
3    torily challenge a jury is a statutory right, and if denied, no
reason for the exercise of the right need be given, and preju-
dice is conclusively presumed.

**Quarrelsome Disposition of Defendant:** ADMISSIBILITY OF EVIDENCE.
4    On a prosecution for murder, where there is a claim of self-
defense, evidence that the defendant at the time of the affray
had lost his money gambling, and at such times was a violent
and quarrelsome man, was competent, and should not have
been excluded.

**Exclusion of Evidence:** SECOND OFFER. Where evidence is excluded
5    as inadmissible under any circumstances, though offered out
of its order, it need not be offered again to authorize an ex-
ception to the ruling.

**Evidence:** RES GESTAE. Evidence of deceased's frame of mind and
6    his acts shortly before the affray is admissible as part of the
*res gestae.*

**Instruction:** CORROBORATION OF DEFENDANT. An instruction which
7    advises the jury that they "are not bound to believe the testi-
mony of defendant any further than it may be corroborated by
other credible evidence" is erroneous, as treating defendant
as a witness already impeached.

**Instruction Regarding Conviction and Acquittal.** An instruction
8    which suggests that if the jury make a mistake in finding a
verdict of guilty it can be corrected, while if they acquit there
is no remedy, is prejudicial error.

Passion and Heat of Blood Affecting Degree of Crime.    The pres-
ence of passion and heat of blood will not reduce the crime of
murder to manslaughter, unless provoked, in which case pas-
sion presupposes the absence of malice.

*Appeal from Ringgold District Court.*—HON. R. L. PARRISH,
Judge.

SATURDAY, DECEMBER 20, 1902.

DEFENDANT shot and killed one Homer Holland on a
street in the town of Mt. Ayr on the 9th day of November,
1901. He was indicted, tried, and convicted of the crime
of murder in the second degree, sentenced to imprison-
ment in the penitentiary for life, and from the judgment
imposed appeals.—*Reversed.*

*Henry & Miles* and *Miles & Steele* for appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A.
Van Vleck,* Assistant Attorney General for the State.

DEEMER, J.—When the trial jury was being impaneled,
and after the state had exercised eight peremptory chal-
lenges and the defendant seven, the following proceedings

1. PEREMP-
TORY chal-
lenges:
waiver of
right.

were had: "The court: The defendant's eighth
peremptory challenge. Judge Henry: The
defendant waives one more challenge. Mr.
Spence: So do we. The Court: The jury may rise and
be sworn. Judge Henry: We have another challenge.
We only waived one. We are not through with our chal-
lenges. The Court: When you waive, you waive. The
court holds that the defendant waived one challenge, and,
the state having waived, that concludes the challenges.
(The defendant excepts to the ruling of the court.) The
Court: The jury may rise and be sworn." The jury was
then sworn. Complaint is made of the court's denial of

defendant's request to exercise the further right of peremptory challenge.    The material parts of the statute involved in this complaint are as follows:    "A challenge to an individual juror is    *    *    *    for cause or peremptory."    Code, section 5359.    "The parties shall challenge alternately commencing with plaintiff, and the challenges for cause being first exhausted or waived, the parties shall then in turn in the same order exercise the right of peremptory challenge, in such manner as the parties may agree upon or the court order."    Code, section 3686.    "If the offense charged    *    *    *    is or may be punishable with death or imprisonment for life the state and the defendant are each entitled to ten peremptory challenges."    Code, section 5365.    "After each challenge which is allowed the vacancy occasioned thereby shall be filled before any further challenge is made, or any new juror thus introduced may be challenged for cause as well as peremptorily, if the challenges are not exhausted."    Code, section 5366.    "The challenges of either party need not be all taken at once but separately, in the following order: to the panel; to an individual juror for cause; to an individual juror peremptorily."    Code, section 5367.    "When twelve jurors are accepted they shall be sworn to try the issues."    Code, section. 5369.    Under substantially similar provisions it was held in *Fountain v. West*, 23 Iowa, 9, that a peremptory challenge simply counted as one of the number to which a party was entitled, and that, after a challenge by the other party, he may use any remaining right of challenge, even as to a juror in the box, when the waiver was made.

In *Spencer v. DeFrance*, 3 G. Greene, 216, it appeared that a jury had been selected and accepted by the parties, and then dismissed until the next day, without being sworn.    At the opening of the next session of court the following day, and before the jury was sworn, plaintiff challenged one of the jurors peremptorily.    The court

denied the right, and plaintiff appealed.    This court, as then constituted, held the trial court was in error in denying the challenge, and in the course of its opinion said, among other things  "We think counsel have a right to an unrestrained exercise of their challenges up to the very moment the jury are required to take the oath."   This language is somewhat qualified by other parts of the opinion, but these qualifications seem to have no reference to the facts now before us.     These are our only previous pronouncements which in any way affect the question here presented.     They establish two propositions.   (1) That waiver of a peremptory challenge does not amount to an acceptance of a juror already in the box; (2) that after a waiver of all challenges, but before a jury is sworn, there may be cases where a party who has not exhausted the number to which he is entitled may exercise a further one peremptorily.    Of course, one entitled to peremptory challenges may waive the right, but the waiver, in order to be conclusive, must, as it seems to us, be a waiver as to all to which the party is entitled.    If the waiver is of the right to exercise a single challenge, as in this case, we know of no reason for holding that the party is concluded thereby.    The practice generally is to waive all when any waiver is made, and, where both parties waive, and there has been no change in the personnel of the jury or of environment, such waiver may well be held conclusive, although even in such a case we think the court might very well permit a party to exercise his right at any time before the jury is actually sworn, provided such party is acting in good faith, and not with intent to gain advantage, or to delay the trial of the cause. The order of challenge is fixed by statute, and, in any event, this order should be preserved.    If that is done, we do not see how one may gain an advantage over the other by permitting him to interpose a peremptory chal-

lenge at any time before the jury is sworn. But we need not elaborate this point. It is enough to say that the statute gave the defendant ten peremptory challenges, and the jury should not have been sworn until these challenges were either waived or exercised, and the jurors accepted, as provided in section 5369 of the Code, hitherto quoted.

The question narrows itself down, then, to the one issue: did the defendant waive his right to exercise the remaining peremptory challenges given him by the statute? The language used by his counsel clearly indicates that he did not. The remark was, "The defendant waives one more challenge." Should this be construed to mean that he waived the two more given him by statute, and that, instead of waiving one, he waived three? Certainly not, unless there be some technical rule of construction which requires us to so hold. We have looked in vain for any such rule, and, in view of the character of the charge made in this case, it should be a very plain and conclusive one to receive our acceptance. As the defendant had an absolute right to exercise ten peremptory challenges unless he waived them, and as we have found he waived but one of the three of those remaining to him when he was called upon to act, it is clear that he was deprived of a right which the statute gave him, and that the court was in error in depriving him of that right.

2. SAME: ——:

The attorney general contends that no prejudice resulted, for the reason that defendant made no excuse for his waiver, and gave no reason why he should be permitted to exercise a further peremptory challenge. This position is unsound, for two reasons: First. Because a party entitled to exercise the right need not give any reason for doing so. This is the fundamental notion on which peremptory challenges are based. Second. The statute gives the right

3. RIGHT of challenge: denial: prejudice.

absolutely, and, if denied prejudice is conclusively presumed. The authorities very generally hold that the right to exercise a peremptory challenge is not lost until the jury is sworn. *State v. Prichard*, 15 Nev. 74; *Johns v. People*, 25 Mich. 499; *Munly v. State*, 7 Blackf. 593; *Beauchamp v. State*, 6 Blackf. 308; *Lamb v. State*, 36 Wis. 427; *People v. Kohle*, 4 Cal. 198; *State v. Peel* (Mont.) 59 Pac. Rep. 169; *Hendrick v. Com.*, 5 Leigh, 707; *Hooker v. State* 4 Ohio, 348; *Appeal of Hamper*, 51 Mich. 71 (16 N. W. Rep. 236); *People v. Carrier*, 46 Mich. 442 (9 N. W. Rep. 487); *State v. Spaulding*, 60 Vt. 228 (14 Atl. Rep. 769); *Lindsey v. People*, 6 Parker, Cr. R. 233; *U. S. v. Davis*, (C. C.) 103 Fed. Rep. 457; *Drake v. State*, 51 Ala. 30. There is no case to the contrary, unless it be *Vance v. Richardson*, 110 Cal. 415 (42 Pac. Rep. 909). But it will be noticed, in the first place, that that was a civil action, and that appellant was informed, before he made a waiver, that, if respondent waived, appellant would not be allowed another peremptory. It was said in that case that, as respondent waived, appellant suffered no prejudice, as he had been given a chance to exercise any objection he might have had to any of the individual jurors. The waiver in that case was general, and not of a single challenge, as in this case. The right of peremptory challenge is one of the safeguards of a defendant against an unjust conviction, and courts should permit the freest exercise of that right within the limits fixed by the legislature. It is, as Blackstone says (4 Blackstone, Commentaries, 353), "an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its purpose." See, as further sustaining our conclusions, 1 Bishop's New Criminal Procedure, section 945.

II. Defendant claimed that he killed Holland in self-defense, and offered testimony to show that deceased, when he had lost his money at gambling, was a violent and quarrelsome man. This evidence was objected to by

the state, and the objection was sustained. There was also evidence to show that at the time of the affray deceased had lost his money at the gaming table. This testimony should have been received. In *State v. Collins*, 32 Iowa, 36, it was held error to reject evidence that deceased, when under the influence of liquor, was quarrelsome, vindictive, ugly, and dangerous. The trial court in this case excluded the offered evidence on the theory that the character of the deceased under special or exceptional circumstances could not be shown; that nothing but his general character was involved. The *Collins Case*, to which we have just referred, clearly negatives that idea, for in that case the testimony offered was to show the character of deceased while under the influence of intoxicants. See, also, *State v. Graham*, 61 Iowa, 608; Wharton, Criminal Evidence (9th Ed.) sections 69-84, inclusive, and cases cited; *Harrison v. Com.*, 79 Va. 379 (52 Am. Rep. 634). Claim is made that the questions to which objections were sustained called for particular acts. But this is not so. Again, it is argued that when the testimony was offered there was no evidence to show that defendant was acting in self-defense. That was not the ground of objection made to the offered evidence, and, as the court held it was inadmissible under any circumstances, the defendant was not required to offer it a second time. Had the trial court sustained the objections on the theory now advanced by the attorney general, and disposed of the matter on the simple ground of improper order of proof, the defendant would, of course, have had the opportunity to offer it at a proper time. But as the ruling was not placed on that ground, but on the broader proposition that such evidence was inadmissible under any circumstances, we are not justified in sustaining the ruling on some other theory. But the theory of the state's

*4. QUARREL-SOME disposition of defendant.*

*5. EXCLUSION of evidence: second offer.*

attorney is not sustained by the record.   The question of
self-defense was in the case from the very beginning.

III.   Certain testimony is said to have been errone-
ously admitted, because not properly in rebuttal of any-
thing offered by defendant.   We do not reverse on this
6. EVIDENCE:    ground alone; and, even if we did, there is no
res gestae.    doubt that the evidence was properly re-
ceived.   Testimony as to the deceased's frame of mind
shortly before the encounter was properly received, and
evidence as to what he was doing shortly before the
affray was also admissible as part of the *res gestæ*.   Some
other rulings on the admission and rejection of evidence are
complained of, but, so far as argued, they seem to be correct.

IV.   The instruction defining reasonable doubt is
complained of.   It is based on the well-known case of
*State v. Ostrander*, 18 Iowa, 459, and, construed in con-
nection with the one immediately preceding which put
upon the state the burden of showing defendant's guilt
"beyond every reasonable doub t," was not erroneous.   In
one instruction the court said, "By malice is meant not
only anger, hate, and revenge, but any other unlawful and
unjustifiable motive."   The use of the word "anger" is
criticised.   Such use was approved in the famous case of
*Com. v. Webster*, 5 Cush. (Mass.) 304 (52 Am. Dec. 711),
and we are not disposed to quarrel with the definition
there given, although there may be cases where it would
be improper to use the word.   Not so here, however.   The
instructions with reference to reasonable doubt as to the
degree of the offense were proper.   We need not set them
out, as to do so would unnecessarily extend this opinion.

Instructions 12½ and 13 are as follows: "12½.  In deter-
mining what weight you are to give the evidence of the de-
fendant, A. M. Hunter, the court instructs you that you
are not required to receive blindly the testimony of such
accused person as true, but you are to consider whether
it is true and made in good faith, or only for the purpose

of avoiding conviction; and you are not bound to believe the testimony of the defendant any further than it may be corroborated by other credible evidence in the case. (13) Gentlemen of the jury, in committing this case to you, the court desires to admonish you of the important issues involved. The court desires you to fully understand the responsibilities upon you at arriving at your verdict in the case. No more solemn and weighty duty can devolve upon a citizen of the state than to pass upon an issue involving the life and liberty of a fellow citizen. On the one hand, you should remember that a failure to perform your duty, by which a crime, if one is shown, might go unpunished, and a criminal escape the penalty of his crime, cannot be corrected by a new trial, for the defendant cannot twice be put in jeopardy under our law. The state demands, and has a right to ask, at your hands, the full performance of your duty in the enforcement of the law, and no notions of mere sympathy and sentimentality should cause you to hesitate in the full performance of your duty. And, on the other hand, you should never for a moment forget your duty to secure and protect every right guarantied by the constitution and our law to the defendant. You should not allow any outside influence or pressure or indignation at *the crime* or sympathy for the deceased or his relatives to influence you in finding a verdict in this case. You should fairly and impartially and coolly and dispassionately examine the evidence in the case, and, after carefully and fully examining and considering it, render your verdict under the law and the evidence, that full and complete justice may be rendered thereby between the state and the defendant."

These are complained of. While the first is in the exact language of one approved in *State v. Mecum*, 95 Iowa, 433, that approval was as against the sole objection that it singled out defendant's evidence, and subjected it to criticism. The instruction was not given unqualified

approval, and we do not think it should be.    The effect of it was to treat the defendant as a witness already impeached, and to lead the jury to think that he should be corroborated in order to be believed.    There is no case which sustains this doctrine. The one which comes most nearly doing so is *Hirschman v. People*, 101 Ill. 568.    But there the right to disregard was bottomed on the premise that the jury found the defendant had wilfully and corruptly testified falsely to a material fact in issue.    That is a very different proposition from the one announced in the instruction now under consideration.    The instruction should not have been given.

*7. INSTRUCTIONS: corroboration of defendant.*

The thirteenth instruction is in the opinion of the writer, similar to one which is often given in cases of this character.    In so far as it involves rules of law, the statements thereof are correct; and there was no error, I think, in emphazing the importance of the case both to the state and to the defendant.    The defendants' rights in the premises were, to my mind, properly guarded, except, perhaps, in the use of the words "the crime," which are italicized in the instruction quoted; and, with these words eliminated, there was no error, I think, in this paragraph.    The instruction, except in the respects mentioned, has support, I think, in the following cases: *State v. Decklotts*, 19 Iowa, 447; *Stout v. State*, 90 Ind. 1; *Smith v. State*, 4 Neb. 288; *State v. Talbott*, 73 Mo. 347; *People v. Hawes* (Cal.) 33 Pac. Rep. 791; *Com. v. Harris* (Pa.) 32 Atl. Rep. 92; Blashfield Instructions Juries, sections 344, 345, and cases cited.    The majority of the court, however, are of opinion that, because of the reference to the effect of an acquittal, the instruction as a whole was wrong, and should not have been given, for the reason that its tendency was to unduly influence the jury against the defendant, and that it contained a suggestion that, if they made a mistake in finding

*8. INSTRUCTION regarding conviction and acquittal.*

a verdict of guilty, it could be cured, while, if the defendant was acquitted, there was no remedy, and did not sufficiently guard the defendant's rights. In this view the writer does not concur, but, in view of a re-trial, we may with propriety say that all are agreed that the instruction, in the form in which it now appears, should be eliminated from a future charge.

V. After the jury had retired for deliberation, it returned into court with the following interrogatory: "Can murder in the second degree be committed in a heat of passion or blood?" In response thereto the court instructed as follows: "If the killing was with malice aforethought, it would be murder either in the first or second degree, whether the defendant was in the heat of passion or blood or not. The distinction between murder and manslaughter has been given you in instruction seven of the charge, and the definition of malice aforethought is given in instruction three of the charge. Murder is the felonious killing with malice aforethought. Manslaughter in the felonious killing without malice, as defined in instruction No. 3. The question as to whether or not the defendant was angry or excited at the time he killed the decedent is immaterial, provided that you find that the killing was unjustifiable, and with malice aforethought, as heretofore defined. If the killing was unjustifiable, and with malice aforethought, and was also willful and deliberate and premeditated, it would be murder in the first degree; but if it was with malice aforethought, and not willful, deliberate, and premeditated, it would be murder in the second degree."

Instruction seven, therein referred to, was the stereotyped one usually given in defining manslaughter. Defendant complains of the additional instruction, and says

9. PASSION and heat of blood affecting degree of crime.      that murder cannot be committed in a heat of passion and blood. If the transport of passion and blood was upon reasonable provoca-

tion, this is, no doubt, true, for in such a case this passion pre-supposes the absence of malice.    But the mere presence of passion or heat of blood will not of itself reduce the crime to manslaughter.    *Smith v. State*, 49 Ga. 485; *State v. Decklotts, supra*; *Smith v. State*, 83 Ala. 28 (3 South. Rep. 551); 2 Bishop's Criminal Law, section 697, notes 6, 7.    While there is no error in the additional instruction abstractly considered, yet we think, as applied to the facts, and more especially to the interrogatory to which it was addressed, the court should have confined itself more closely to the exact point inquired about, and refrained from injecting definitions of murder in the first degree.    A more explicit expression of what effect heat of passion would have upon the case should also have been given.    The heat of blood or passion referred to in the original instructions would have reduced the crime to manslaughter, and, to avoid confusion, it would have been safer to define what was meant by these terms as used in the additional instruction.

VI.    Instructions one, two, and fourteen asked by the defendant and refused by the court, in so far as they are correct, were embodied in the charge as given, and there was no error in denying them.

Other questions are argued, but, as they are not likely to arise on a retrial, we do not consider them.    For obvious reasons we omit any reference to the claim that the verdict is without support in the evidence.    For the errors pointed out, the judgment must be reversed, and the cause remanded for a retrial.—REVERSED.