RICHARD GOULD v. STATE OF NEBRASKA.

FILED APRIL 21, 1904. No. 13,642.

1. **Trial**: ERROR. In order to predicate error on the fact that the father of a state's witness was permitted, while she was testifying, to sit near her in the court room, it must affirmatively appear that his presence caused her, in giving her evidence, to deviate from the truth, or color her statements to the prejudice of the accused.

2. **Secondary Evidence.** Where it is shown that a note and certain letters written by the accused to, and received by, a child alleged to have been enticed away from her parents by him, have been totally destroyed by her, at his request, and can not be restored or produced, and that she remembers their contents, she may be permitted to give oral evidence of what they contained.

3. **Instructions.** Instructions examined, and *held* to have been properly given.

4. **Evidence.** Record examined, and the evidence *held* sufficient to sustain the verdict.

5. **Sentence.** Where a man of mature years, who is married and has a family of 7 children, is guilty of enticing a girl of 15 years of age away from her parents for an unlawful purpose and in violation of the provisions of section 20 of the criminal code, he being a minister of the gospel and she a member of his church, a sentence of 6 years in the penitentiary is not an excessive punishment for his crime.

ERROR to the district court for Merrick county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*Patterson & Patterson,* for plaintiff in error.

*F. N. Prout, Attorney General,* and *Norris Brown,* contra.

BARNES, J.

At the September, 1903, term of the district court for Merrick county, one Richard Gould was tried and convicted of the crime of child stealing. After his motion for a new trial was overruled, the court sentenced him to imprisonment in the penitentiary of this state for the period of 6 years. To reverse that sentence he prosecuted error to this court, and will hereafter be called the plaintiff.

In the first assignment of error the plaintiff complains because the father of Eva Flint, the child charged in the information to have been stolen or enticed away, was allowed to remain seated near her while she testified on the trial of the case. The plaintiff states no reasons in support of this assignment which in any way appeal to our consideration. The substance of all that is said by him is, that he thinks the father had manufactured testimony in the nature of a family record, which was introduced in evidence as exhibit "A"; and for that reason his being allowed to sit facing his daughter while she was testifying was prejudicial to the plaintiff's rights. A careful examination of the record fails to disclose any improper conduct on the part of the father, and it nowhere appears that the testimony of the daughter was in any way affected by the father's presence.

The plaintiff, by his second assignment, contends that the court erred in allowing the witness, Eva Flint, to give oral evidence of the contents of a note she had received from him the day before they left the state, and certain letters theretofore written by him and received by her.

The only argument made by counsel in support of this
contention is, that no sufficient foundation was laid for
the introduction of this class of testimony. It appears
from the record that the note and the letters in question
were written by the plaintiff, and received by the witness;
that after she had read them, at his special request, they
were totally destroyed by her; so that, as she testified, it
was impossible to find or restore them. In addition to
these facts, the witness stated that she could remember
certain portions of what the note and letters contained.
Thereupon she was permitted to state, in detail, such parts
of them to the jury as she could remember. It thus ap-
pears that a sufficient foundation was laid for the intro-
duction of this evidence, and plaintiff's contention is with-
out merit.

The next assignment of error argued, in substance, is,
that the court erred in permitting the witness, Eva Flint,
to state that she would not have gone away but for the
inducements of plaintiff. The facts constituting these
matters of inducement had been properly put in evidence,
and after the witness had testified to them in detail, she
then stated that, but for them, she would not have left her
home with the accused. It was proper for her to state
these matters, to give the actions and statements of the
accused, and state what effect they had on her. Therefore
the court did not err in receiving this evidence.

It is further contended that the court erred in giving the
jury his instruction numbered 1, on his own motion. We
have examined this instruction, and find that it contains
a fair and impartial statement of the charges contained in
the several counts of the amended information on which
the accused was tried, and informed the jury of the issues
presented for their consideration. It is insisted, however,
that, because the state elected to rely for a conviction on
the third count of the information, it was error for the
court to mention the other two counts. We are unable to
agree with this contention. It was the duty of the court
to advise the jury of the facts charged in the information,

which was fairly and impartially done. This was immediately followed by a direction to them, as follows: "The state having elected to rely upon the third count of the information, the first and second counts are therefore withdrawn from your consideration. Therefore the only questions for your consideration in this case are the allegations contained in the third count of the information."

It thus appears that the statements contained in the first and second counts of the information were entirely withdrawn from the consideration of the jury, and in such a manner that they could not have been misled to the prejudice of the plaintiff by this instruction.

Complaint is also made of the giving of instructions numbered one, two, three and four, asked for by the state. The best way to dispose of these assignments is to consider them separately and in connection with section 20 of the criminal code under which the prosecution took place, which provides as follows: "Any person who shall maliciously or forcibly or fraudulently lead, take, or carry away, or decoy, or entice away, any child under the age of eighteen years, with intent unlawfully to detain or conceal such child from its parent or parents, or guardian, or other person having the lawful charge of such child, shall be imprisoned in the penitentiary not more than twenty years nor less than one year."

By the first of these instructions complained of the jury were told, in substance, that any solicitation, representation or suggestion made to Eva Flint by the accused for the purpose of influencing her to leave her father would, if it actually induced her to go away, be sufficient to make out a case of enticing.

By the second instruction the jury were informed that it was unnecessary for the state to establish beyond a reasonable doubt that it was the intention of the defendant in enticing Eva Flint away, if he did entice her away, to both detain and conceal her from her father; that it was sufficient for them to find from the evidence beyond a reasonable doubt that it was his intention to do either,

And, if they so found, it would be sufficient to make out a case of enticement, with intent, as charged in the information.

By the third instruction the jury were told that, while it was necessary for them to find and determine the intent of the accused, beyond a reasonable doubt, yet in so doing it would be immaterial for them to determine whether Eva Flint joined in said intent or not. In short, the substance of this instruction was, that the intent with which the accused performed the acts complained of, was what should be considered by them, and that the intent of Eva Flint in leaving her home with him was immaterial.

By the fourth paragraph of the instructions the jury were told, in substance, that in order to establish the intent of the accused it was not necessary for the state to show that it was his intent to detain or conceal Eva Flint from her father, against her will. No authorities are cited to prove that these instructions, or any of them, were erroneous. And we are satisfied that there is nothing contained in them which could in any manner prejudice plaintiff's legal rights. They seem to cover the propositions of law involved in the case, and to state fairly to the jury what it was necessary for the state to prove beyond a reasonable doubt, in order to warrant a conviction, under the section of the statutes above quoted.

The next assignment of error is, that the evidence is not sufficient to sustain the verdict. This question seems to be relied on to a greater extent than any of the others, and is argued at considerable length by counsel for the plaintiff in error. The gist of the argument seems to be that the plaintiff and his counsel appear to labor under the impression that because Eva Flint consented to go away with the plaintiff, that he is innocent of the charge of child stealing. To sustain this contention would practically set aside, and hold for naught, the statute under which this prosecution was conducted. It must be borne in mind that the offense of enticing a child away for unlawful purposes, without the use of violence, is entirely sepa-

rate and distinct from the one of forcible abduction. The fact that Eva Flint consented to leave her parents, with the accused, is immaterial. The offense is complete if the accused enticed her away with the unlawful intent, and by holding out hopes of some advantage to her, or by allurements persuaded her to go with him. The word "entice," as used in this statute, must be given its ordinary and usual meaning, which is: To draw on; to instigate by inciting hope or desire; to allure, especially in a bad sense; to lead astray, to tempt, to incite. Its synonyms are: To allure; to coax; to destroy; to seduce; to tempt; to inveigh; to persuade, and prevail oh. That the accused, by his statements to Eva Flint, persuaded and induced her to leave her home and go with him for his unlawful purposes, is fully and completely established by the evidence contained in this record.

Lastly, the plaintiff contends that the court should re-duce his sentence; that 6 years in the penitentiary is too long a term, and too severe a punishment for the offense committed by him. It appears from the record that the plaintiff is a man of mature years, having a wife and 7 children; that he was pastor of the church of which Eva Flint and her mother were members; that taking advantage of his confidential relations with them as their spiritual adviser, he frequented their home; that Eva Flint was a girl about 15 years old, perhaps a year older, but not exceeding that age; that shortly after the accused commenced his visits to her home he began his attempts to induce her to accompany him to some distant state, and participate with him in his unlawful purposes. It appears that she hesitated to leave her parents, but her hesitations were overcome by his blandishments and promises, together with his pretended solicitude for and care of her; that finally persuaded by his promises she yielded to him, and acompanied him from her home to Aurora in Hamilton county, from thence to Lincoln, from there to Omaha, to St. Paul, Minnesota, to Minot and finally to Williston, North Dakota, where she entered upon a course of illicit

relations with him, and where they were found living to-
gether as man and wife at the time of his arrest.  On the
trial he offered no explanation of his conduct, and there
appears a letter in the record from him to the father of
this child in which he acknowledges his guilt.  The follow-
ing is a part of the letter:  "My plans were well laid, and
I worked while others slept.  Some day you will hear from
us again.  When you get this we will be hundreds of miles
from here."

A careful examination of the record in this case satisfies
us of the guilt of the accused.  With this view of the case
we are unable to say that his sentence is too severe.  His
conduct was so reprehensible that it would shock the sen-
sibilities of the irreligious, even those who are "dead in
trespasses and in sin."  Such conduct on the part of a
minister of the gospel can not be too severely censured.
The accused made use of his confidential relation as spirit-
ual adviser of the mother and daughter to frequently visit
this family which he has disgraced, and entice from her
home this child whose ruin he has accomplished; and in
our judgment "the punishment fits the crime," and the
judgment of the district court is

AFFIRMED.