# DECEMBER 13, 1939

JOHN ESCOBAR v. THE STATE.

No. 20261.  Delivered April 5, 1939.
Rehearing Denied December 13, 1939.

The opinion states the case.

*Stephens & Sams,* of Benjamin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of enticing and decoying a minor from the custody of her parents, and was by the jury fined $150.00, hence this appeal.

There are no bills of exception found in the record, and consequently we are relegated alone to an examination of the facts in order to ascertain their sufficiency.

The facts show that the minor, Mildred Cook, a girl fifteen years old, was living with her father and mother in Knox County, in rather poor circumstances. She testified that she did not longer want to live with her parents, and that she asked appellant to take her away from home; that she asked him six or seven times. Her parents both testified that they did not want her to leave home, and that they did not give their consent for appellant to take her away.

The State introduced appellant's confession, as follows:

"My name is John Escobar, I am 28 years of age; my post-office address is Benjamin, Texas; I live at Benjamin, Texas, in Knox County. My father's name is Phillip Escobar. He lives at Benjamin, Texas. He is about 81 years of age.

"I had met Mildred Cook at the straw stack near the League Estate Barn twice before I met her there on the 31st day of March. We had talked about going to Old Mexico, and Mildred had asked me one time before we left there to have intercourse with her, but we did not have time to do it as she had to go back home. This was close to the straw stack on the League Ranch in Knox County, Texas. I knew she was only fifteen years of age when I left Knox County with her. She said she had been going with boys when she was between 14 and 15 years of age.

"She asked me to take her away from home, as her father was mean to her. She said if I did not take her away from home that she was going to turn me in for something. I was afraid she would turn me into the laws. We had been loving one another up about two weeks ago and I tried to get into her pants, but she said let's let it go for a while. And she got mad at me. She said she did not love me any more and I told her that it was up to her. On March 31st, 1938, she sent me a note by her little brother, the one that was with her when we met and left Knox County, and said I am going to the hay stack after dinner, and I want you to take me as far as you can from my folks. After I got the note I went to Knox City to Guadalupe Flores, and went to his house and ask him what to do, that I was in a serious tight and I didn't know what to do. I told him that this girl had sent me a note telling me what she had written. He said the only chance was to leave out with her. I told him that Mildred had a friend that she wanted to look for. I asked him to take us to Old Mexico. I was going

to take Mildred to Old Mexico and live there. Lupe told me that he could not take us to Old Mexico, but he could take us to San Angelo. That I would be safe there. Lupe had a brother there in San Angelo. He took us to his brother's house. We spent the night there at his brother's house. We slept in the dugout. I had four intercourses with her that night. She asked me for it. We stayed there yesterday. I had one act yesterday, last night I had four more acts of intercourse with her. I do not know of any one else ever having had intercourse with Mildred Cook.

"J. C. Patterson)                                "John Escobar.
"Keith Whitt    ) Witnesses."

Mildred Cook, the girl, testified that she loved appellant, and would marry him if he was not already married. That she wanted to go to Old Mexico and live with him; that he never tried to get her to leave home with him; that she had an act of intercourse with appellant in Knox County, and several acts in San Angelo.

Guadalupe Flores testified that appellant came to his house on the night of March 31, 1938, near Knox City, and asked him to take him and a white girl to Old Mexico. He said he was in trouble with a white girl. The witness told appellant that he could not take him to Old Mexico, but would take him to San Angelo, where witness had a brother, and he did take them there, and appellant paid him about $17.00 for the trip.

These are the salient points in the case, and present appellant's contention, and that is that he could not be guilty of enticing and decoying a minor away from the custody of its parents when such minor requested him to take her away from such custody, and went with him voluntarily.

We are not impressed with the soundness of such doctrine. In this instance the person offended against is not the minor but the parents of the minor who thus loses the privilege of the society and the custody, care, control and services of such minor. It is the parent's duty, and should be his pleasure, to train and care for the child, and attempt to bring it up in such a manner that it may become a useful member of society. This is a valuable right, and by proper thinking parents treasured most highly. That such a right can be wished away at will by a wayward child is not based upon sound reason, and, in our judgment, the voluntary leaving home with another,—who might have held out enticing and alluring ideas and promises to such child,—should not be a proper defense to a charge such as this.

The case of Cummins v. State, 37 S. W. Rep. 435, cited by appellant, is not in point, the facts therein widely differing from those in the instant case, that case holding that the bare fact that a party hires a minor with knowledge that such minor has a parent living is not sufficient to constitute the offense of knowingly decoying or enticing a minor from his parent.

In the case of Cockrell v. State, 160 S. W. Rep. 343, we also find a different state of facts from the instant case. In that case accused was a 19 year old girl. She and her cousin, Edna Cockrell, 18 years of age, went to a party with the knowledge of Edna's mother but not the knowledge of her father. When the two girls returned to Edna's home her father whipped her, and Lula, the accused, told Edna that she would leave home before she would stand such treatment. On the next night they again went to a party, and upon returning home Edna told her mother that if the mother was going to tell the father about this last party, that she, Edna, was going to leave home, and upon the mother refusing to promise not to tell the father, Edna did leave home and went to accused's home, accused's father being Edna's uncle. The next day they heard the father was looking for Edna with a gun, and they finally sent her from one uncle to another until she reached Oklahoma, in order to keep the enraged father from killing her. In this case no one enticed her, no one decoyed her; it was the unreasonable act of the father that forced her to leave her home, and surely he had no right to complain because of the fact that it was his outrageous conduct towards his daughter that forced her to leave.

We think the true doctrine is adverted to in the following quotation from Truelove v. State, 96 Texas Crim. Rep. 537, 258 S. W. Rep. 826, as follows: "* * * we do not regard the contention that the young lady may have left the home of her father voluntarily as any defense to the charge that appellant enticed her away. If she had been taken away forcibly the offense might have been abduction and not that of enticing a minor."

Following this rule we find that in California there was a similar offense denominated "child stealing," and under that statute "one who maliciously or fraudulently entices away a minor child is guilty of child stealing. To entice is to instigate by exciting hope or desire, to lead astray. The minor may be enticed away without domination over his or her will. The desire to do something promised by the abductor may alone suffice to lead astray the most self-willed boy or girl. * * *" "The

question, therefore, whether the girl accompanied the defendant of her own volition is, in our opinion, immaterial; nor is it a defense in a case like this. 1 Cyc 146, 8 R. C. L. 297; State v. Brandenberg, 232 Mo. 531, 134 S. W. 529, 32 L. R. A. (N. S.) 845; People v. Cook, 61 Cal. 478; Queen v. Biswell, 2 Cox. C. C. 279; Gould v. State, 71 Neb. 651, 99 N. W. 541." The above being a quotation from People v. Torres, 192 Pac. 175.

Again we quote from People v. Smith, 62 Pac. 440, a California case: "The appellant insists that the court committed reversible error in giving the following instruction to the jury, to-wit: 'You are further instructed that the offense involved in the charge against the defendant is an offense against the person having lawful charge of such child, and it is immaterial whether the girl, Mary Spiers, accompanied the defendant voluntarily or not.' " There is no merit in the appellant's contention that the foregoing instruction is erroneous. In People v. Torres, 48 Cal. App. 606, 192 P. 175, a like instruction was approved, and a number of cases are cited in the opinion showing that the authorities are unanimous in upholding the doctrine that the willingness of the minor is immaterial in considering the guilt or innocence of the defendant."

Our statute, Art. 535, Penal Code, which denounces the enticement of a minor from its parent uses the words "entice or decoy." Webster's Innternational Dictionary defines the word "entice" to mean "To draw on by exciting hope or desire; to allure; to attract; * * * Often in a bad sense; to lead astray; to induce to evil; to tempt."

We quote from Words & Phrases, 2nd Series, Vol. 2 p. 285:

"The word 'entice' as used in the Criminal Code, Sec. 20, declaring that any person who shall maliciously or forcibly or fraudulently lead, take or carry away, or entice away any child under the age of 18 years, with intent unlawfully to detain or conceal such child from its parent or parents or guardian, must be given its ordinary and usual meaning, which is to draw on; to instigate by inciting hope or desire; to allure, especially in a bad sense; to lead astray; to tempt; to incite. Its synonyms are 'to allure'; 'to coax'; 'to destroy'; 'to seduce'; 'to tempt'; 'to inveigle'; 'to persuade'; and 'to prevail on,' " Gould v. State, 99 N. W. Rep. 541, 71 Neb. 651; also see Arrington v. State, 59 S. E. Rep. 207, 3 Ga. App. 30, which holds that an invitation to a 15 year old boy to take a trip, promising to pay all expenses and give him anything he wanted was an "inticing."

The case of People v. Carrier, 9 N. W. Rep. 487, 46 Mich. 442, holds in part: It is not necessary that the female should be asked in direct language to go. Anything done which would tend to persuade the female to go away would constitute the offense, if successful.

It is our judgment that the appellant's own confession relative to his conduct with this minor girl was calculated to and did lead her astray, did seduce her, and allure her with the prospect of living with him a life of shame in Mexico. That his loving her and his efforts to seduce her had caused her to want to go with him on this Mexico trip, and thus he tempted her; he induced her to evil and placed himself, by this conduct, under the denunciation of the statute, regardless of the fact that the young girl failed to heed, and possibly had never heard the admonition contained in the saying, "if sinners entice thee, consent thou not."

We think these facts are sufficient to sustain the judgment, and it is therefore affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

A very able motion for rehearing has been filed in this case and insistently presents an argument for a reversal on the ground that the minor left home voluntarily. It presents that she persuaded and coerced the appellant to take her away and into his native land, Old Mexico. He admits that they were fleeing into that country when they were apprehended at San Angelo. If we look only to one scene in the tragic drama, we might take this view of the facts. However, looking at the entire case, as we must, we can neither concur in the facts insisted upon nor in the application of the law for it all had its origin in appellant's own wooing.

It would be easier for us to apply the law to the facts and reach the same conclusion in this case if the minor child, (a girl) were of a different character. The normal mind thinks differently when the woman involved may be admired, sympathized with and encouraged because of her virtue. It is difficult for human beings to reason in the same fashion where the individual involved has stooped to the lowest depths of conduct. Let us note, however, that the facts are not in dispute, and it is not a question of a bad girl's veracity but of her rights and society's duty to her. The bad should have the same protection by the law as the good. If we take out of

this case the sin of the woman and consider the conduct of the appellant from the entire record our conclusion will be easy. Indeed, we should view him in the light of one charged with responsibility in his relationship with a girl so weak as apparently to be a moral imbecile. Were she physically crippled, the horror of his conduct would be easily apparent. In the instant case, she appears to be morally and mentally a cripple. No appeal is found in the facts to excuse his acts in law or in any manner to mitigate the offense.

This case is distinguishable on the facts from the leading case of Cockrell v. State, 160 S. W. 343, cited by the appellant, for in that case the principal and moving cause of the girl's leaving home was the abuse of her father and her fear that he might take her life. The accused there had done no more than numerous others. She had consoled a minor and had agreed with her in her view as any reasonable mind must have done under the facts of that case. There seems to have been no enticement in the case. The girl was fleeing from her father who pursued her with a gun and Miss Cockrell merely gave aid to one whose mind had been made up and whose purpose would have been accomplished regardless of the appellant's attitude toward her.

In this appeal we have a wayward girl, it is true, and the only evidence in the record of any condition in her home that was unsatisfactory was given by her on the witness stand in an effort to free the appellant. The girl's statements that her parents were mean to her were mere conclusions based on no facts and could, at most, reflect only the dissatisfied mind of a girl at a tender age—old enough for human weakness but too young for discretion. Furthermore, so far as the record reflects, this dissatisfaction and unrest arose after she yielded to the entreaties of the appellant and are more likely the result of that unlawful relationship than of any ill-advised conduct of her parents. It is hardly possible that she could have carried on with the appellant in the manner she described and according to the desire which she developed in his association without attracting some suspicion from her parents. They owed it to her to make her unhappy in such conduct. Human experience would teach us that her unrest most likely arose because of her desire for the uninterrupted illicit relationship with a man with whom she had fallen in love. According to his own statement, and by it we are bound, no other person had any such relationship with her. He is the instigator of the affair and because of her unrest, she desired to flee with him and live with him in Mexico; and this desire

arose because of the conduct he now asks us to overlook. No act of hers can suspend the law in his behalf. The fact that he found her an easy victim adds heinousness to his crime. She was as incapable as anyone her age would be of waiving any rights of her own, much less the parental right, and the rights of society for whom the law is made. Her plea and her demands that he take her into Mexico are beside the case. The injury to society and to the parents is none the less because this plan at that particular time was hers instead of his. It was planted in her mind by his conduct and it grew as any reasonable person might have expected it to do.

This court has held that it is immaterial that the minor left the home voluntarily, as quoted in the original opinion from Truelove v. State, 96 Tex. Cr. R. 537. We regard this case in point on the only contention which the appellant could reasonably make, that is, that the minor left home voluntarily. If we rid our minds of any thought of the character of the girl, as it is unquestionably our duty to do, we are left with this as the only question in the case. We think that the conviction under the facts was proper.

The motion for rehearing is overruled.