**Reversed and Rendered and Opinion filed June 12, 2012.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-11-00642-CR**

---

**MATTHEW ALFRED FRIEDSAM, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 09CR3167**

---

## OPINION

Appellant Matthew Aldred Friedsam appeals his conviction for enticing a child. Because the evidence is insufficient to support his conviction, we reverse the trial court's judgment and render judgment acquitting him of the charged offense.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the offense of "enticing a child" with the intent to commit a felony, on or about May 24, 2009. TEX. PENAL CODE ANN. § 25.04(b) (West 2011). At the time of the charged offense, the 15-year-old child, K.B., was appellant's neighbor and frequently babysat appellant's daughter. K.B. also accompanied appellant and his daughter when they went four-wheeling or rode horses at the home of one of appellant's friends. In addition, appellant took K.B. and his daughter for manicures and shopping for clothes. On five occasions, K.B. accompanied appellant and his daughter on overnight trips. Sometimes appellant also took K.B. out to eat, and once included K.B.'s boyfriend at her request. Once or twice every two or three weeks, K.B. went to the movies with appellant, but on these occasions, appellant did not bring anyone else. Although appellant never drank with K.B., he bought her alcohol and cigarettes, and on one or two occasions, gave her marijuana.

The State introduced testimony of an extraneous offense that occurred on May 9, 2009. K.B. testified that on one of their camping trips, she had five drinks before going to bed wearing a bathing suit, shorts, and a T-shirt. She stated that appellant sat next to her and penetrated her vagina with his fingers, and the next thing she remembered was waking up the following morning. K.B. did not tell her parents because they had a poor relationship and she did not think that they would believe her. Appellant was charged with sexual assault of a child for this incident in trial court cause number 09CR3166.

The incident made the basis of the indictment occurred May 24, 2009. Appellant said that he was going sailing with a friend and asked permission from K.B.'s mother to take K.B. with him. She gave him permission to do so. During the drive, appellant offered to buy K.B. alcohol, but she declined. He made a phone call, then told K.B. that the plans had changed, and he took her to a hotel in Galveston. K.B. was concerned to see that room had a single king-sized bed, and she found a bag in the room containing a box of cigarettes and a negligee. Appellant went to get something from his truck, and

2

K.B. went to the hotel's pool and used her cell phone to call her mother for a ride home. When appellant joined K.B. at the pool and offered to buy her a drink, she accepted. Appellant then took K.B. out to dinner, and while he was paying, K.B. called her mother again to find out when she would be arriving. K.B. learned that her mother was waiting for her at the hotel. Appellant and K.B. went back to the hotel room, and while appellant was smoking a cigarette on the room's balcony, K.B. took her luggage, went to her mother's car and left, taking the negligee with her. She testified that she did not simply tell appellant that she wanted to go home because she was afraid he would get angry.

K.B. testified that she never thought of living with appellant, and he never suggested it. He never spoke badly of K.B.'s parents, her home, or her living arrangements, and he never encouraged K.B. to refuse to go to church, to school, or to participate in activities with her family. K.B.'s mother always knew when she was leaving and when she was due back, and K.B. always returned home when she was expected to do so. Although K.B. sometimes thought about moving out of her parents' home when she had been fighting with her mother, she testified that this had nothing to do with appellant. She further testified that she drank alcohol and smoked cigarettes and marijuana before she met appellant, but she followed her parents' religion and the curfew they set for her. She always had her cell phone with her when she was with appellant, and she never was prevented from leaving an event she attended with him if she wanted to go home.

K.B.'s mother D.B. similarly testified that her daughter carried a cell phone and she, D.B., was able to have access to her child and to exercise parental control. K.B.'s mother knew that K.B. and appellant went on some outings without other people, but D.B. permitted this because she trusted appellant. Occasionally D.B. would not allow her daughter to go on an outing with appellant, and on those occasions, K.B. obeyed her parents and did not go. D.B. confirmed that on the date of the charged offense, K.B. had permission to be with appellant, and had been on overnight trips to Huntsville and to

Galveston with him and his daughter several times before.[1]  She further confirmed that K.B. continued to reside with her parents throughout these events; that K.B. had never gone with appellant without her parent's permission; and that appellant always brought K.B. home as agreed..

## II. ANALYSIS

In the dispositive issue in this case, appellant challenges the sufficiency of the evidence to support his conviction.  In determining whether the evidence is sufficient to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and the reasonable inferences it supports, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.  *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011).  Applying this standard, we consider whether the evidence would allow a reasonable juror to find, beyond a reasonable doubt, all of the essential elements of the crime of enticing a child.

A person commits such an offense "if, with the intent to interfere with the lawful custody of a child younger than 18 years, he knowingly entices, persuades, or takes the child from the custody of the parent or guardian or person standing in the stead of the parent or guardian of such child."  *Id.* § 25.04(a).[2]  Appellant challenges the sufficiency of the evidence supporting his conviction on the ground that there is no evidence of intent to interfere with the lawful custody of K.B.  Thus, our disposition requires us to decide what it means "to interfere with the lawful custody of a child."

In interpreting this statute, the Court of Criminal Appeals noted that "'[c]ustody' of a child connotes the right to establish the child's domicile and includes the elements of immediate and direct care and control of the child, together with provisions for its needs."

---

[1] In fact, they had stayed at the same hotel before.

[2] The offense is a misdemeanor, "unless it is shown on the trial of the offense that the actor intended to commit a felony against the child."  If such a showing is made, then the offense is a felony.

*Cunyus v. State*, 727 S.W.2d 561, 564 (Tex. Crim. App. 1987) (quoting *Leithold v. Plass*, 413 S.W.2d 698, 700 (Tex. 1967)). *See also Little v. State*, 246 S.W.3d 391, 401 & nn. 10–11 (Tex. App.—Amarillo 2008, no pet.) (explaining that the common usage of the word "custody" includes "the rights and duties of parents to have physical possession of their child, direct [the child's] moral and religious training, establish [the child's] residence, and provide care, control, protection, and reasonably discipline their child"); *Davis v. Davis*, 794 S.W.2d 930, 936 (Tex. App.—Dallas 1990, no pet.) ("Custody embraces the sum of parental rights with respect to the rearing of a child, including its care. It includes the right to the child's services and earnings, the right to direct the child's activities and make decisions regarding its care and control, education, health, and religion.").

The purpose of the statute is "to prevent a minor child from being decoyed and enticed away from his parent, guardian, or person standing in the stead of such parent or guardian." *McNelly v. State*, 152 S.W.2d 771, 771 (Tex. Crim. App. 1941) (discussing predecessor statute, which made it an offense to "knowingly entice or decoy any minor in the State away from the custody of the parent or guardian or person standing in the stead of the parent or guardian"). Under the statute, as under its predecessor, "'the person offended against is not the minor but the parent of the minor who thus loses the privilege of the society, and the custody, care, control and services of such minor.'" *Cunyus*, 727 S.W.2d at 564 (quoting *Escobar v. State*, 133 S.W.2d 781, 782 (Tex. Crim. App. 1939)).

"Custody" is used in the statute in the same way that it historically has been used in the context of family law. This is seen not only in the interpretive caselaw, *see id.*, but in the structure of the Penal Code. "Enticement" is classified as an offense against the family, and the statute codifying the offense is found in the Texas Penal Code after the offenses of "interference with child custody"[3] and "agreement to abduct from custody,"[4]

---

[3] *Id.* § 25.03.

[4] *Id.* § 25.031.

and before the offense of "criminal nonsupport"[5]—each of which expressly refers to court orders concerning the child's custody, such as those commonly entered in cases of divorce.

Here, there is no evidence that can be interpreted as demonstrating appellant's attempt to interfere with K.B.'s lawful custody, that is, to interfere with the K.B.'s parents' custodial rights, such as the right to establish her domicile, to decide what school she will attend, and receive the benefit of her services. *See Cunyus*, 727 S.W.2d at 564. Most tellingly, appellant sought and obtained permission from K.B.'s parents to take their daughter on an overnight trip with him. *Cf.* The only witnesses to appear at trial were K.B. and her mother, and both testified that appellant always brought K.B. home as her parents expected.

In every reported case affirming a conviction for enticing a child, there was evidence, first, that the child stopped residing with his or her parents without their consent, and second, that the defendant's conduct persuaded the child to take such a step. *See, e.g.*, *Escobar v. State*, 133 S.W.2d 781, 782 (Tex. Crim. App. 1939) (affirming conviction under predecessor statute where fifteen-year-old girl ran away with defendant because she believed herself to be in love him, but "parents both testified that they did not want her to leave home, and that they did not give their consent for appellant to take her away"); *Little v. State*, 246 S.W.3d 391, 399–400 (Tex. App.—Amarillo 2008, no pet.) (finding evidence legally sufficient to support conviction where appellants encouraged child to follow a religion different from that of her family; criticized the morals of the child's mother; told child that "they were her God-given family"; encouraged child to lie to and disobey her mother to continue contact with them after her mother forbade it; offered to allow child to live with them; and supplied the manner, means, and opportunity for child to run away).

---

[5] *Id.* § 25.05.

On the other hand, without that evidence, the courts have reversed the conviction. *See, e.g.*, *Cunyus*, 727 S.W.2d at 562–63, 565 (where defendant played with boys at a park, offered to buy them beer, told them to ask their parents for permission to go to a movie with him, gave them "dirty books," and boys accepted defendant's offer to drive them home, conviction reversed because his conduct, though "unacceptable adult behavior" could not "validly be interpreted as an offer that would interfere with the parents' 'right to establish the child's domicile'" or intrude or their exercise of the right to care for and control the child); *Sanchez v. State*, 712 S.W.2d 170, 171–72 (Tex. App.—Austin 1986, no pet.) (per curiam) (reversing probation revocation because there was no evidence of intent to interfere with parents' lawful custody where evidence showed only that child came to the appellant's house, traveled with him to a motel where the two had sex, and the appellant dropped the child off the next day near a relative's house at the child's request).

Here, however, it is undisputed that at all relevant times, K.B. continued residing with her parents. *Cf. Cockrell v. State*, 160 S.W. 343, 345 (Tex. Crim. App. 1913) ("[I]t must be shown the minor left the home of its parents at the instance, suggestion, and by the persuasion of the person accused."). There is no evidence that appellant ever attempted to persuade the child that she should live with him or that she should not continue living with her parents. Indeed, both K.B. and her mother testified that the two families had been on good terms; and far from trying to entice K.B. away from her family's custody, appellant allowed his own daughter to spend the night at their home. Even if the jury could infer that appellant intended to have sex with K.B., such evidence does not support the conclusion that K.B. had left her parents' custody, much less that appellant had enticed her to do so. *See Sanchez*, 712 S.W.2d at 172. We therefore sustain appellant's second issue.

### III. CONCLUSION

After reviewing the evidence in the light most favorable to the verdict, we conclude that no rational juror could have found beyond a reasonable doubt that (a) appellant knowingly enticed, persuaded, or took K.B. from her parents' custody; and (b) he did so with the intent to interfere with K.B.'s parent's lawful custody of her. We accordingly reverse appellant's conviction and render judgment acquitting him of the charged offense.

/s/     Tracy Christopher
        Justice

Panel consists of Justices Boyce, Christopher and Jamison.
Publish — Tex. R. App. P. 47.2(b).

8