## BIGGS ET AL. v. STATE.

KIDNAPING—CUSTODY OF CHILD.

1. To constitute the act kidnaping, the removal of a child too young to be capable of objection must have been from the possession, actual or constructive, of the lawful custodian, or against the will of someone authorized to object.

2. Where a husband abandoned his wife before the birth of his child, and thereafter did not live with, support, or in any way care for her, was not at any time in the custody or possession of the child and made no attempt to obtain such custody or possession until after the mother with his knowledge had sent the child, when less than a month old, in charge of its grandmother to another state; *Held,* that the father had abandoned the sole custody of the child to the mother, and, further, by standing by without objection, when he knew the child was being carried off, he gave an implied consent to its removal, and the mother and grandmother were not, therefore, guilty of the crime of kidnaping in so removing the child.

3. Under a statute giving the father the right of guardianship of a minor child in preference to the mother, it is the actual state of things, and not the existence of a mere legal relation, that is contemplated.

4. A mother and grandmother who remove a minor child, too young to object, into another state are not guilty of kidnaping under the statute, where the father consented to

such removal, though the latter may have been at the time in the actual custody of the child and entitled thereto.

[Decided August 22, 1904.]                    (77 Pac., 901.)

ERROR to the District Court, Natrona County, HON. CHARLES E. CARPENTER, Judge.

Viola Biggs and Annie E. Trout were charged with and convicted of kidnaping the minor child of the former. They prosecuted error. The facts are stated in the opinion.

*Fred D. Hammond,* for plaintiffs in error.

The child, being less than one month old, was incapable of giving consent to its own removal from the place of its residence or the custody of its actual guardian; therefore such consent must have come from one authorized to give it. The State concedes that the mother both consented and authorized the taking away of the child. The question of the custody and possession of a minor child is one of fact. While the law makes the father the natural guardian of his minor children, it was not the legislative intention to make his guardianship exclusive as against the mother, who might have a mutual guardianship with him. (Nugent v. Powell, 4 Wyo., 173; 20 L. R. A., 202.) A parent may lose the right of custody by his voluntary act, by misconduct and sometimes by misfortune. (*In re* Lalley (Ia.), 51 N. W., 1156; 17 Ency. Law (1st Ed.), 368; Bishop Stat. Cr., Sec. 633; People v. Fowler, 25 Pac., 1110.) Neither parent has an absolute and exclusive right to the custody of their minor children. (17 Ency. Law (1st Ed.), 364; State v. Angel, 21 Pac., 1075.) Under the decision in John v. State, 6 Wyo., 203, the plaintiffs in error were not guilty of kidnaping, though the facts in that case were somewhat different from those in the case at bar. In this case the father and mother were not living together; the child had never been in the custody or possession of the father, the complaining witness, who had never seen his child, though frequently invited to do so by the mother. He never in any

way supported it, but had allowed it to remain in the possession of its mother, who resided with her mother, her co-defendant. Under such facts the offense of kidnaping was not established, and the judgment should be reversed. The proof being insufficient to sustain a conviction, the court should have directed a verdict of acquittal upon motion of the defendant. (Blashfield Inst., 13.)

The court erroneously excluded proof that the complaining witness notified merchants and others that he would not be liable for bills contracted by his wife.

*Josiah A. Van Orsdel,* Attorney General, instead of filing a brief, submitted a written statement of his views of the case, containing substantially the following:

I am forced to the conclusion, after carefully reading the evidence in this case, that it discloses conclusively that Biggs, the father of the child alleged to have been kidnaped, not only abandoned his wife prior to the birth of the child, but that he notified the family physician that he would not be liable for any bills contracted by his wife, and also the Webel Mercantile Company to the same effect. It also appears that he knew when the child was taken away, saw the plaintiffs in error take it to the depot, and did not interfere nor make any protest whatever. The matter of a criminal prosecution seems to have been an afterthought. It seems to me that the court erred in refusing to grant the motion of defendants below for a verdict of acquittal at the time the State rested its case. I have attempted to find in the evidence contained in the record facts sufficient under the holdings of this court in the case of Nugent v. Powell, 4 Wyo., 173, to sustain the judgment in the case, but I am compelled to confess that I am unable to do so. It seems that the trial court erroneously sustained objections to certain questions as to the conduct of the complaining witness with reference to his notification to merchants and others that he would not be liable for any bills contracted by his wife.

CORN, CHIEF JUSTICE.

The plaintiffs in error were found guilty under an information which charged that they "did unlawfully, feloniously, fraudulently and forcibly carry off and kidnap one Leonard Biggs, an infant child of the age of one month, and under, from his, the said Leonard Biggs', place of residence in said county with felonious intention then and thereby of carrying said Leonard Biggs away from his said place of residence and into the State of Colorado and without the consent of the father of the said Leonard Biggs, said acts not being then and there done in pursuance of the laws of the State of Wyoming or of the United States."

The statute provides that "whoever kidnaps or forcibly or fraudulently carries off or decoys from his place of residence, or arrests or imprisons any person, with the intention of having such person carried away from his place of residence, unless it be in pursuance of the laws of this state, or of the United States, is guilty of kidnaping."

The evidence is undisputed that the plaintiff in error, Viola Biggs, and the complaining witness, one John William Biggs, were married in November, 1902, and lived together as man and wife until about May 15th, 1903, when he abandoned her, and they never lived together afterwards. She gave birth to this child on August 16th, 1903, and about the 10th day of September following sent her mother, the plaintiff in error, Annie E. Trout, with it to Denver for the alleged purpose of placing it in an orphans' home. At the time of the birth of the child Viola Biggs was living with her mother, Mrs. Trout. Biggs was not present at its birth and was not living with, supporting or in any way caring for his wife. Upon the contrary, prior to this time he had notified the physician who, he understood, was to attend her and who afterwards did attend her, in her confinement, that he would not be responsible for the charge for his services. He was never in the custody or possession of the child prior to its being sent to Denver and did not make any attempt to obtain such custody or possession. Upon the .

contrary, he knew it was being sent·away, saw them taking
it to the railroad station and made no protest or objection
whatever. Indeed, according to his own statement, he never
saw the child until after it had been sent away.

Under these circumstances, it cannot be seriously con-
tended that the evidence even tends to establish the crime
of kidnaping. It is too plain for argument that the mere
removal of the child to Colorado by its mother was not a
crime. If she was its custodian, it was not only her right,
but, if she performed her duty in regard ·to its care and
nurture, it was a matter of necessity that she should decide
where it was to be kept and cared for. To say nothing of
other elements necessary to constitute the offense, the re-
moval must have been from the possession, actual or con-
structive, of the lawful custodian or against the will of
someone authorized to object. The child itself was in-
capable of objection, and it is not suggested that it was
against the will of any person, unless the father. But not
only is there no evidence that it was taken from his custody
or against his will or contrary to his wishes, but his own
testimony and all the evidence in the case rebuts any such
suggestion. He not only abandoned the sole custody to
the mother, but, by standing by without objection when he
knew it was being carried off, he gave an·implied consent
to its removal. There was no evidence in the case not en-
tirely consistent with the innocence of the defendants and
the Attorney General, representing the State in this court,
concedes that their conviction was erroneous. This neces-
sarily disposes of the case.

But it may be proper to say further that, so far as can
be gathered from the· record, it seems to have been the
theory of the prosecuting attorney, concurred in by the
District Court, that by law the father being entitled to the
guardianship of the minor child in preference to the mother,
he in some way in this case was the custodian of the child
by force of the statute. But, upon this proposition, it is
sufficient to say that, under such statutes, it is the actual

state of things and not the existence of a legal relation that is contemplated. (People v. Carrier, 46 Mich., 442; Nugent v. Powell, 4 Wyo., 173; State v. Ruhl, 8 Ia., 447.) And in the case of an illegitimate child, though, as between the parents, the mother has the better claim to its custody, yet, when the natural father has the actual custody, he has been held to be its custodian under the terms of a statute similar to the one in this case. (Bish. Stat. Cr., Sec. 633.) But from the statement of facts already set out, it is evident that, even if the father had been not only entitled to the custody, but in the actual custody, the plaintiffs in error were not guilty of any crime under the statute, for the reason that he was consenting to the removal. The judgment will be reversed.                                    *Reversed.*

KNIGHT, J., concurs.

POTTER, J., did not sit.