

# NUMBERS 13-20-00089-CR,
# 13-20-00090-CR & 13-20-00091-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**NICHOLAS WAYNE DOSS,**                                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

### On appeal from the 197th District Court
### of Willacy County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Silva
### Memorandum Opinion by Chief Justice Contreras

A jury found appellant Nicholas Wayne Doss guilty of two counts of sexual assault,

a second-degree felony[1]; one count of producing or directing a sexual performance by a

---

[1] Trial court cause number 2019-CR-0033-A; appellate cause number 13-20-00089-CR.

child under eighteen years of age, a third-degree felony[2]; and one count of enticing a child with intent to commit a felony, a third-degree felony.[3] *See* TEX. PENAL CODE ANN. §§ 22.011(a)(1), 25.04, 43.25(d). Appellant was sentenced to concurrent prison terms of seventeen years for each sexual assault count and ten years for the other two counts. On appeal, appellant argues: (1) he had an "absolute right" to a separate trial on each indictment; (2) he was entitled to a jury instruction to "clarify the elements" of the enticing a child offense; (3) the evidence was insufficient to support a finding that he intended to interfere with the lawful custody of a child; and (4) the evidence was insufficient to support a finding that the sexual assaults were committed in Willacy County. We affirm the judgments as modified.

## I.     BACKGROUND

Appellant was charged in three separate indictments filed on March 27, 2019. The first indictment set forth two counts of sexual assault: Count I alleged that appellant caused the penetration of the mouth of A.O., a child under seventeen years of age, by his sexual organ; Count II alleged that appellant caused the penetration of A.O.'s sexual organ by his sexual organ. *See id.* § 22.011(a)(1)(A), (B). The second indictment alleged in two identical counts that appellant intentionally or knowingly, and with knowledge of the character and content of the material, produced or directed a photograph that included sexual conduct by A.O., a child under eighteen years of age. *See id.* § 43.25(d), (e). The third indictment alleged in two identical counts that appellant, with the intent to interfere with the lawful custody of A.O. and to commit sexual assault against A.O., knowingly

---

[2] Trial court cause number 2019-CR-0034-A; appellate cause number 13-20-00090-CR.

[3] Trial court cause number 2019-CR-0035-A; appellate cause number 13-20-00091-CR.

enticed, persuaded, or took A.O. from the custody of L.A., her mother. *See id.* § 25.04.

A jury was selected for a trial on all the indicted offenses on October 21, 2019. The following day, the State moved for mistrial based on defense counsel's allegedly improper communication with jurors. Defense counsel agreed to the mistrial and the trial court granted it. On November 7, 2019, a pre-retrial hearing was held at which defense counsel raised an objection to "consolidating all these cases." Counsel stated that he would prefer to proceed first on the sexual assault case. He explained his belief that proceeding on all three cases would be "unduly prejudicial" because, while the enticing and sexual performance counts require proof that appellant knew the age of the victim, the sexual assault count does not require such a showing.[4] The State responded that, because the offenses "happened all at the same time" and involve the "same evidence," it would serve "judicial efficiency" to try all three cases together. The trial court denied appellant's objection to the cases being heard at the same trial. Defense counsel then asked whether the State would file a notice of consolidation "so that if there should be an appeal, that it be under one consolidated cause number rather than all three." The State did so.

Eleven days later, on the morning before the retrial was set to begin, appellant's counsel again objected to "consolidation of the offenses," noting that "the State hasn't filed a motion to consolidate"[5] and arguing that "if [appellant] gets found guilty on [the sexual assault] offense, then the other cases are just going to fall right in in [sic] domino effect." The trial court replied: "I mean, if he's found not guilty, then those cases fall in

---

[4] Contrary to counsel's apparent belief, the sexual performance count did not require a showing that appellant knew the age of the victim. *See* TEX. PENAL CODE ANN. § 43.25(h) ("Conduct under this section constitutes an offense regardless of whether the actor knows the age of the victim at the time of the offense.").

[5] In fact, the State did file a "Notice of Consolidation" in all three trial court cause numbers after the November 7, 2019 hearing.

domino effect; right? And if he's found not guilty on that one, then the State and you are going to want to try those other two. How does that make any sense?" The trial court then moved on to other matters, including a motion in limine filed by the State and jury selection. The trial began the following day.

At trial, Mark Jenkins, a financial crimes detective with the Huntsville Police Department, testified that he was called to assist in a traffic stop made by another officer on November 6, 2018. He was informed that one of the occupants of the stopped vehicle, Susanna Almanza, had fled the scene. He later learned that A.O., a sixteen-year-old child, was in the vehicle along with Almanza as well as "a hitchhiker who was a convicted sex offender." Jenkins said Almanza "had custody of [A.O.]" at the time and that Almanza was "hanging out of the window of the sunroof of this vehicle."

Jenkins said he obtained permission from A.O.'s mother to search A.O.'s phone. He found a "string of Snapchat messages" that were explicit and "sexual in nature" between A.O. and appellant; he took photos of the messages, and they were entered into evidence at trial. Based on the messages, Jenkins believed that appellant sent nude photos of himself to A.O. From A.O.'s phone, Jenkins was able to locate appellant's phone number and social media accounts, and he determined that appellant lived near Raymondville, so Jenkins contacted the Raymondville Police Department.

Denise Ledesma, a sex crimes detective with the Raymondville Police Department, testified that she received the report from Huntsville police, including photos of the text messages between appellant and A.O., on November 7, 2018. Also that day, A.O.'s mother, L.A., filed a report of a possible sexual assault. Ledesma interviewed A.O., during which A.O. admitted that she and appellant exchanged nude photos of each other.

4

A.O. also told Ledesma that she met with appellant three times to have sexual intercourse, including once at appellant's residence on October 31, 2018, and another time in appellant's car on a "dirt road" north of Raymondville. Ledesma then arrested appellant and brought him to the police department. She said that, before interviewing appellant, she advised him of his privilege against self-incrimination, his right to remain silent, his right to have an attorney present, and his right to terminate the interview. According to Ledesma, appellant voluntarily signed a waiver of his rights. A video recording of the ensuing interview was entered into evidence and played for the jury at trial. During the interview, appellant admitted to sending nude photos of himself to A.O. and to having sexual intercourse with A.O. on two occasions. Ledesma said A.O. was sixteen years of age in September and October of 2018, whereas appellant was twenty-eight years of age.

On cross-examination, Ledesma acknowledged that A.O. had previously given a statement to Huntsville police in which she said that "nothing happened" the first time she met appellant because "she was uncomfortable." Ledesma also conceded that, although the text messages obtained from A.O.'s phone described explicit photos, those photos were not visible in the messages. Ledesma explained that this is because Snapchat is "known for erasing its content once viewed by each receiver."

L.A. testified that A.O. is her daughter, born in January of 2002. She said she became aware of the "situation" with appellant when she found out A.O. had chlamydia. L.A. said A.O. "confided in [her] that she had been accosted" on Halloween of 2018. L.A. explained that she was friends with Almanza's mother, and she knew that A.O. was going to travel to Houston with Almanza. She also knew appellant from seeing his picture on

5

Facebook. L.A. stated on cross-examination that she was not concerned that Almanza was "trafficking" A.O.

A.O. testified that she met appellant on Facebook and talked with him on Snapchat. She said appellant told her he was eighteen years old, and she told him she was sixteen. A.O. conceded that she sent appellant around thirty photos of her breasts and vagina; when asked why, she stated "[b]ecause he would ask." She said appellant sent her a video of him "[p]utting his hand on his penis." A.O. said she later went to appellant's residence in Harlingen, where they watched a movie and had vaginal intercourse. Another time, they drove around in appellant's car and had oral sex and vaginal intercourse while stopped on a "back road" near Raymondville. She did not have her mother's permission to leave the house to meet appellant, so she "would sneak out through the window."

A.O. acknowledged she initially told Ledesma that Almanza had picked her up to go to "the island" but that this was a lie, and instead, she was going to Houston. She explained she lied to Ledesma because she "loved" appellant and felt like she needed to protect him.

Prior to jury deliberations, the State abandoned the second enticing a child count and the second sexual performance count. The jury convicted appellant on the remaining four counts and assessed punishment as set forth above. This appeal followed.

## II. DISCUSSION

### A. Consolidation and Motion to Sever

By his first issue, appellant argues that the trial court erred by consolidating the three indictments and by denying his motion to sever.

6

### 1.    Standard of Review and Applicable Law

We review a trial court's ruling on a motion to sever for an abuse of discretion. *Hodge v. State*, 500 S.W.3d 612, 621 (Tex. App.—Austin 2016, no pet.). Under that standard, the ruling will be upheld unless "it is so clearly wrong as to lie outside the zone of reasonable disagreement" or is "arbitrary or unreasonable." *Id.* (citing *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002); *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005)).

Section § 3.02 of the Texas Penal Code states that "[a] defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." TEX. PENAL CODE ANN. § 3.02(a); *see Werner v. State*, 412 S.W.3d 542, 546 (Tex. Crim. App. 2013) (noting that this rule "furthers convenience and efficiency by curtailing piecemeal litigation, the antithesis of judicial economy" (cleaned up)).[6] But "[w]hen a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, the state shall file written notice of the action not less than 30 days prior to the trial." *Id.* § 3.02(b).

Moreover, § 3.04 of the penal code provides:

(a)    Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses.

. . . .

(c)    The right to severance under this section does not apply to a prosecution for offenses described by Section 3.03(b) unless the court determines that the defendant or the state would be unfairly prejudiced by

---

[6] Separate offenses are part of a "single criminal episode" if "(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or (2) the offenses are the repeated commission of the same or similar offenses." TEX. PENAL CODE ANN. § 3.01. Appellant does not dispute that the alleged offenses were part of a "single criminal episode."

7

a joinder of offenses, in which event the judge may order the offenses to be tried separately or may order other relief as justice requires.

TEX. PENAL CODE ANN. § 3.04. A trial court abuses its discretion if it denies a timely-filed motion to sever under this statute, unless the defendant has been charged with an offense listed in § 3.03(b). *Id.*; *see* TEX. PENAL CODE ANN. § 3.04.[7] If charged with a § 3.03(b) offense, a defendant seeking severance "must show some type of prejudice beyond that which a defendant would automatically face in any case in which felony counts are joined." *Casey v. State*, 349 S.W.3d 825, 832 (Tex. App.—El Paso 2011, pet. ref'd).

The enactment of § 3.04(a) "reflects concerns about the disadvantages defendants may face in a consolidated trial," including: (1) that the jury may convict not because the defendant is guilty of the crime charged but because of their prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, they probably committed the crime charged. *Werner*, 412 S.W.3d at 547. On the other hand, § 3.04(c) "was intended to 'restrict defendants' right to multiple trials for serious sex offenses committed against children so that child victims cannot be forced to undergo multiple trials.'" *Casey*, 349 S.W.3d at 832 n.8 (citing House Comm. on Crim. Juris., Bill Analysis, Tex. S.B. 381, 75th Leg., R.S. (1997)).

### 2. Analysis

Appellant argues in part by his first issue that the State failed to timely file written notice of its intent to consolidate the three indictments for trial. *See* TEX. PENAL CODE ANN. § 3.02(b). The record in each cause number contains a "Notice of Consolidation" filed by the State on November 7, 2019, which is seventeen days after the first trial began and

---

[7] Section 3.03(b) lists various offenses, including sexual assault against a child and sexual performance by a child, but not including enticing a child. *Id.* § 3.03(b)(2)(A).

twelve days prior to the beginning of the retrial. Appellant is therefore correct that the notice was untimely. *See id.*

In response, the State argues that appellant waived any complaint regarding the consolidation because he failed to object to it, or move to sever, prior to the beginning of the first trial. *See Thornton v. State*, 957 S.W.2d 153, 155 (Tex. App.—Fort Worth 1997) ("If a defendant moves for severance so that he may avoid detriment at trial, logic dictates that a motion seeking to avoid that detriment must be made, at the latest, prior to trial. Once the trial commences, it is simply too late for the defendant to request that the offenses be tried separately."), *aff'd*, 986 S.W.2d 615 (Tex. Crim. App. 1999); *see also Milligan v. State*, 764 S.W.2d 802, 803 (Tex. Crim. App. 1989) ("[W]here a defendant is faced with multiple pending indictments, those indictments may be consolidated into a single proceeding with the express or implied (by failure to object) consent of the defendant."). The State notes that appellant "began fil[]ing identical motions and proposed orders in all three causes, with all three cause numbers appearing in the heading," beginning more than thirty days prior to the retrial. It suggests that appellant therefore had constructive notice of the consolidation within the timeframe prescribed in the statute.

Assuming but not deciding that the issue has not been waived and that the trial court erred by denying appellant's motion to sever, we nevertheless conclude that appellant has not shown the requisite level of harm to obtain reversal on this basis. Both parties cite caselaw stating that the right to severance under § 3.04 is "absolute" regardless of whether the defendant suffered harm as a result of the consolidation of charges. *See Coleman v. State*, 788 S.W.2d 369, 371 (Tex. Crim. App. 1990) (noting that, if a request for severance "is timely, the defendant's right to a severance is absolute, and

9

severance is mandatory"); *Thornton*, 957 S.W.2d at 155 ("Improper denial of a severance request is not subject to a harm analysis."). However, these cases predate *Werner*, in which the Texas Court of Criminal Appeals clarified that any error in the denial of severance under § 3.04 is subject to a non-constitutional harm analysis as prescribed in Texas Rule of Appellate Procedure 44.2(b). *Werner*, 412 S.W.3d at 547. Under that standard, any error must be "disregarded" if it "does not affect substantial rights." TEX. R. APP. P. 44.2(b).

In arguing that his substantial rights were affected by the consolidation of the three indictments, appellant relies exclusively on his assertion—which is raised independently in his third issue and discussed *infra*—that the evidence was insufficient to support a finding that he intended to interfere with L.A.'s custody of A.O. Even if that were true, appellant does not explain how the joinder of the three offenses in a single trial affected his substantial rights. In particular, though he complains that the evidence was insufficient to support a finding that he intended to "interfere with the lawful custody of a child" as required to support the enticing a child offense, he does not dispute that the evidence was sufficient to support the intent elements of the other two offenses. Further, he provides no reason for us to suspect that the verdicts on the sexual assault and sexual performance charges would have been different had the enticing a child offense been severed and tried separately.

Appellant has not established that the consolidation of the indictments caused him to suffer "prejudice beyond that which a defendant would automatically face in any case in which felony counts are joined." *Casey*, 349 S.W.3d at 832. Accordingly, no reversible error has been shown. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's first issue.

10

**B.  Omitted Jury Instruction**

Appellant's second issue concerns his request for an instruction in the jury charge. After a jury trial in a felony case, the trial court is required to submit to the jury a "written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14. We review the trial court's refusal to submit a jury charge instruction for abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). If there is error and the defendant preserved the alleged error, then we must reverse as long as the error was not harmless. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *see Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984).

Appellant argues that he was "entitled to a jury instruction that would clarify the elements of the offense in accordance with the [Texas] Court of Criminal Appeals' finding" in *Cunyus v. State*, 727 S.W.2d 561, 565 (Tex. Crim. App. 1987). In that case, the appellant was convicted of enticing a child upon evidence that he "entertain[ed]" five or six young boys at a park by "playing various games with them," "purchas[ing] them refreshments," "t[elling them] to ask [their] parents about going to the movies," showing them "dirty books," offering to buy them beer, and giving them a ride home in his truck. *Id.* at 562–63. The court found insufficient evidence to support the conviction because, though the appellant's conduct was "unacceptable adult behavior," there was no evidence "that the parents' ability to control or raise their child was affected or in any way diminished." *Id.* at 565. The court noted that "'[c]ustody' of a child connotes the right to

11

establish the child's domicile and includes the elements of immediate and direct care and control of the child, together with provisions for its needs." *Id.* at 564 (citing *Leithold v. Plass*, 413 S.W.2d 698 (Tex. 1967). Thus, "the mere offer of an activity to a child which would remove the child from where the parents or legal guardians have permitted the child to be will not alone constitute an offense." *Id.* at 565.

At the charge conference, defense counsel asked for an instruction reciting the *Cunyus* court's conclusion that "the mere offer of an activity to a child which would remove the child from where the parents or legal guardians have committed the child to be will not alone constitute an offense." The State objected on grounds that "there is no authority for including case law in a jury charge" and that the proposed instruction would be an improper comment on the weight of the evidence. The trial court denied appellant's request and instead submitted the charge as proposed by the State, which tracked the statutory definition of enticing a child contained in penal code § 25.04. *See* TEX. PENAL CODE ANN. § 25.04(a) ("A person commits an offense if, with the intent to interfere with the lawful custody of a child younger than 18 years, he knowingly entices, persuades, or takes the child from the custody of the parent or guardian or person standing in the stead of the parent or guardian of such child."); *id.* § 25.04(b) ("An offense under this section is a Class B misdemeanor, unless it is shown on the trial of the offense that the actor intended to commit a felony against the child, in which event an offense under this section is a felony of the third degree.").

We cannot conclude the trial court abused its discretion in refusing to submit appellant's proposed instruction. A defendant generally has the right to an instruction on any defensive issue raised by the evidence, regardless of whether the evidence has been

controverted. *Sanchez v. State*, 400 S.W.3d 595, 598 (Tex. Crim. App. 2013) (noting that "[t]his rule is designed to ensure that the jury, not the judge, decides the credibility of the evidence"). But if the defensive theory is not explicitly listed in the penal code and merely negates an element of the State's case, rather than independently justifying or excusing the conduct, the jury should not be instructed on it. *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007); *see Alonzo v. State*, 353 S.W.3d 778, 784 (Tex. Crim. App. 2011). Here, appellant's proposed instruction reflects a defensive theory that he made a "mere offer of an activity" to A.O. That defensive theory is not listed in the penal code but instead would serve to merely negate an element of the offense—i.e., that appellant had the "intent to interfere with the lawful custody" of A.O. *See* TEX. PENAL CODE ANN. § 25.04(a). Moreover, as further discussed in our discussion of appellant's third issue, the evidence did not support a finding that appellant made a "mere offer of an activity" to A.O. such that L.A.'s "ability to control or raise" A.O. was unaffected. *See Cunyus*, 727 S.W.2d at 565.

For the foregoing reasons, the trial court did not err in denying appellant's request for a jury instruction in this regard. Appellant's second issue is overruled.

## C.    Evidentiary Sufficiency

By his third issue, appellant challenges the sufficiency of the evidence supporting the enticing a child conviction. *See Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (noting that, to satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence). Specifically, he claims there was no evidence to establish that he had "the intent to interfere with the lawful custody of a child." *See* TEX. PENAL CODE ANN. § 25.04(a).

### 1. Standard of Review and Applicable Law

In reviewing evidentiary sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04. Thus, we must defer to the jury's resolution of any conflicts in the evidence. *See Brooks*, 323 S.W.3d at 899.

We measure the legal sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). A hypothetically correct charge, consistent with the indictment, would instruct the jury to find appellant guilty of felony enticing a child if: (1) "with the intent to interfere with the lawful custody" of A.O., (2) a child younger than eighteen years, and (3) with the intent "to commit a felony against [A.O.]," (4) appellant knowingly enticed, persuaded, or took A.O. from the custody of L.A., A.O.'s mother. TEX. PENAL CODE ANN. § 25.04. Appellant only challenges the evidence supporting the first element—i.e., his intent to interfere with L.A.'s lawful custody of A.O. Intent may generally be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

### 2. Analysis

Appellant argues, as he did in his second issue, that his case is analogous to

*Cunyus* as well as *Friedsam v. State*, 373 S.W.3d 817, 818 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In *Friedsam*, the complainant K.B. was a fifteen-year-old neighbor of the appellant who frequently babysat appellant's daughter. *Id.* at 818. On one occasion, appellant told K.B.'s mother that he was going "sailing with a friend" for the weekend and asked the mother if he could take K.B. with him. *Id.* The mother gave him permission; however, appellant did not go sailing but instead took K.B. to a hotel room with a single king-sized bed. *Id.* Later, K.B. was able to call her mother, who picked her up. *Id.* However,

> K.B. testified that she never thought of living with appellant, and he never suggested it. He never spoke badly of K.B.'s parents, her home, or her living arrangements, and he never encouraged K.B. to refuse to go to church, to school, or to participate in activities with her family. K.B.'s mother always knew when she was leaving and when she was due back, and K.B. always returned home when she was expected to do so. Although K.B. sometimes thought about moving out of her parents' home when she had been fighting with her mother, she testified that this had nothing to do with appellant. . . . She always had her cell phone with her when she was with appellant, and she never was prevented from leaving an event she attended with him if she wanted to go home.

*Id.* at 818–19.

In reversing Friedsam's conviction, the Fourteenth Court of Appeals held that "there is no evidence that can be interpreted as demonstrating appellant's attempt to interfere with K.B.'s lawful custody, that is, to interfere with K.B.'s parents' custodial rights, such as the right to establish her domicile, to decide what school she will attend, and receive the benefit of her services." *Id.* at 820. The court noted that, "[i]n every reported case affirming a conviction for enticing a child, there was evidence, first, that the child stopped residing with his or her parents without their consent, and second, that the defendant's conduct persuaded the child to take such a step." *Id.* at 820–81 (citing *Escobar v. State*, 133 S.W.2d 781, 782 (Tex. Crim. App. 1939) (finding evidence legally

15

sufficient where fifteen-year-old girl ran away with defendant because she believed herself to be in love with him, but her "parents both testified that they did not want her to leave home, and that they did not give their consent for appellant to take her away"); *Little v. State*, 246 S.W.3d 391, 399–400 (Tex. App.—Amarillo 2008, no pet.) (finding evidence legally sufficient where appellants encouraged child to follow a religion different from that of her family; criticized the morals of child's mother; told child that "they were her God-given family"; encouraged child to lie to and disobey her mother to continue contact with them after her mother forbade it; offered to allow child to live with them; and supplied the manner, means, and opportunity for child to run away)). On the other hand, without such evidence, courts have reversed the conviction. *Id.* (citing *Cunyus*, 727 S.W.2d at 562–63, 565; *Sanchez v. State*, 712 S.W.2d 170, 171–72 (Tex. App.—Austin 1986, no pet.)). For example, in *Sanchez*, evidence showed that P.A.S., a child, came to appellant's house and then traveled with him to a motel where the two had sexual intercourse. *Sanchez*, 712 S.W.2d at 170–71. The appellant dropped P.A.S. off the next day near a relative's house at her request. *Id.* at 171. In *Sanchez*, even though the parents made clear to the child that they did not want her to have contact with the appellant, the Austin Court of Appeals found "no evidence of an intent on appellant's part to interfere with the parents' lawful custody." *Id.* at 172.

We disagree that this case is analogous to *Cunyus*, *Friedsam*, or *Sanchez*. Appellant does not dispute that the jury could have reasonably concluded beyond a reasonable doubt, from the evidence, that he knowingly enticed, persuaded, or took A.O. from her mother's custody. *See* TEX. PENAL CODE ANN. § 25.04(a). In *Cunyus*, the court emphasized that "when the children did leave the premises with the appellant[,] he took

16

them where he offered to take them: home." 727 S.W.2d at 564–65. Moreover, "when [appellant] offered to take them to the movie[,] at least one of the children stated in a sworn affidavit that the appellant suggested the child call and get permission to do so." *Id.* at 565. Similarly, in *Friedsam*, the "appellant sought and obtained permission from K.B.'s parents to take their daughter on an overnight trip with him." *Friedsam*, 373 S.W.3d at 820. In this case, there was no evidence, similar to that adduced in *Cunyus* and *Friedsam*, which would indicate that appellant lacked the intent to interfere with L.A.'s custody when he "knowingly enticed, persuaded, or took" A.O. from her custody.

The instant case is also distinguishable from *Sanchez*, where there was "no evidence as to the nature of the relationship between appellant and [the victim] prior to the day in question, or of any conduct on appellant's part, from which it can be inferred that appellant 'enticed' or 'persuaded' [the victim] to come to his house." 712 S.W.2d at 172 (citing *Escobar v. State*, 133 S.W.2d 781, 783–84 (1939) (holding that the term "knowingly entice" does not require "direct language" but instead usually means "to allure," "to draw on by exciting hope or desire," "to seduce," "to coax," or "to prevail on")). As noted, it is undisputed that the evidence was sufficient to prove beyond a reasonable doubt that appellant knowingly enticed, persuaded, or took A.O. from L.A.'s custody. *See* TEX. PENAL CODE ANN. § 25.04(a). This evidence included text messages in which A.O. told appellant not to pick her up at her house; informed appellant that her mom was "talking down on [her]"; and advised appellant that she did not have a car because her dad "took [her] keys." A.O. testified she did not have permission to leave and that she snuck into and out of her home without her mother's knowledge.

The jury could have concluded from all of this evidence that appellant knew A.O.

resided with L.A. and further, that he had the intent to interfere with L.A.'s custodial rights. Accordingly, the evidence was sufficient to support the jury's finding on this element of the offense. We overrule appellant's third issue.

**D.    Venue**

By his fourth issue, appellant argues the evidence was insufficient to support a finding that the charged sexual assaults occurred in Willacy County, as alleged in the indictment.[8] Under Texas law, venue is not an element of the offense and need not be established beyond a reasonable doubt. *See Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014). Rather, "[t]o sustain the allegation of venue, it shall only be necessary to prove by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue." TEX. CODE CRIM. PROC. ANN. art. 13.17.

"Sexual assault may be prosecuted in the county in which it is committed, in the county in which the victim is abducted, or in any county through or into which the victim is transported in the course of the abduction and sexual assault." *Id.* art. 13.15.[9] Venue may be proved by circumstantial as well as direct evidence. *Rippee v. State*, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964). The trier of fact may make reasonable inferences from the evidence to decide the issue of venue. *Dewalt v. State*, 307 S.W.3d 437, 457 (Tex.

---

[8] Appellant does not dispute that the elements of sexual assault, as set forth in the penal code, were supported by sufficient evidence.

[9] Neither party argues that A.O. was "abducted" so as to establish venue in a county other than where the assault occurred. *See* TEX. CODE CRIM. PROC. ANN. art. 13.15; *see also Hammock v. State*, No. 03-18-00089-CR, 2019 WL 6795863, at *4 n.3 (Tex. App.—Austin Dec. 13, 2019, no pet.) (mem. op., not designated for publication) (rejecting appellant's argument that that article 13.15 established permissive venue in Travis County because "no evidence in this case demonstrated that [the victim] was abducted" (citing *Fairfield v. State*, 610 S.W.2d 771, 778 (Tex. Crim. App. 1981) (observing that the term "abduct" "invariably connotes the use of force"))).

App.—Austin 2010, pet. ref'd); *Thompson v. State*, 244 S.W.3d 357, 362 (Tex. App.—Tyler 2006, pet. dism'd). In reviewing venue, we view all the evidence in the light most favorable to an affirmative venue finding and determine whether a rational trier of fact could have found by a preponderance of the evidence that venue was proper. *Dewalt*, 307 S.W.3d at 457; *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Appellant notes correctly that the trial record shows that one assault occurred at appellant's residence in Harlingen, while a second one occurred on a "back road" near Raymondville. We take judicial notice that, though Raymondville is in Willacy County, Harlingen is in Cameron County. It appears undisputed, therefore, that according to the trial evidence, at least one sexual assault did not take place in Willacy County.

Nevertheless, that fact does not deprive the trial court of venue in this case. As noted, the two sexual assault charges in the indictment corresponded to two different manners and means of committing the offense: Count I alleged that appellant caused the penetration of A.O.'s mouth by his sexual organ; Count II alleged that appellant caused the penetration of A.O.'s sexual organ by his sexual organ. A.O. testified that appellant committed both of those acts in appellant's car on the "back road" near Raymondville. Although the evidence did not establish the exact location of the "back road," the jury could have inferred from A.O.'s testimony that this incident occurred in Willacy County.[10]

Viewing the evidence in the light most favorable to an affirmative venue finding, we conclude that a rational trier of fact could have found by a preponderance of the

---

[10] Appellant does not argue that, because there was evidence of more than two sexual assaults, the jury's verdict may not have been unanimous.

evidence that Willacy County was the proper venue for both sexual assault counts alleged in the indictment. *See Dewalt*, 307 S.W.3d at 457; *Gabriel*, 290 S.W.3d at 435.

Appellant's fourth issue is overruled.

### III.     MODIFICATION OF JUDGMENTS

Though neither party raises the issue, we observe that the judgments of conviction contain errors. We have the power to modify a judgment to speak the truth when we are presented with the necessary information to do so. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

First, all three judgments incorrectly state that punishment was assessed by the jury. The record establishes that appellant elected for the trial court to assess punishment, and the trial court did so. We modify the judgments to reflect that punishment was in fact assessed by the trial court.

Second, the judgment of conviction for the sexual performance by a child count incorrectly states that appellant was convicted of a second-degree felony. The indictment corresponding to that count also states that the charged offense is a second-degree felony. However, the facts alleged in the indictment and proven at trial establish only a third-degree felony. In particular, the evidence was undisputed that, at the time of the offenses, A.O. was younger than eighteen years of age, but she was not younger than fourteen years. *See* TEX. PENAL CODE ANN. § 43.25(e) ("An offense under Subsection (d) [producing, directing, or promoting a sexual performance by a child] is a felony of the third degree, except that the offense is a felony of the second degree if the victim is younger than 14 years of age at the time the offense is committed . . . ."). It is apparent from the reporter's record of the punishment hearing that defense counsel, the prosecutor, and the

20

trial court were all aware that the sexual performance count was in fact a third-degree felony. In particular, the prosecutor requested the "maximum" punishment of ten years imprisonment on that count, which is consistent with the range of punishment for a third-degree felony. *See id.* § 12.34(a). The trial court granted that request and sentenced appellant to ten years' imprisonment on the sexual performance count. Thus, the judgment's recitation that the offense was a second-degree felony appears to be a clerical error. We modify the judgment in trial court cause number 2019-CR-0034-A to correct that error and to state that appellant was convicted of a third-degree felony.

## IV.  CONCLUSION

We affirm the trial court's judgments of conviction as modified herein. *See* TEX. R. APP. P. 43.2(b).

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
26th day of August, 2021.